## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**UNITED STATES OF AMERICA**

**v.**                                             **4:24-CR-565-1**

**LYNDELL PRICE**

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS INDICTMENT WITH RPEJUDICE OR IN THE ALTERNATIVE SUPPRESS EVIDENCE

The Defendant, Lyndell Price, respectfully files this brief in support of Defendant's Motion to Dismiss the Indictment with Prejudice, or in the alternative, Suppress Evidence at the Court's instruction now that the parties have conducted an evidentiary hearing, and still moves this Court to dismiss this indictment as the Government used information obtained from the violation of Defendant's right to counsel and in violation of Defendant's Fifth and Sixth Amendment Rights and shows the Court as follows:

### STATEMENT OF UNDISPUTED FACTS PROCEDURAL POSTURE

1.      Defendant Lyndell Price ("Lynn Price" or "Lyndell Price") filed his initial motion to Dismiss the Indictment or in the alternative Suppress Evidence. <u>See</u> Dkt. 67.

2.      The Government filed its response in opposition to Defendant's motion to Dismiss or in the alternative Suppress Evidence.  <u>See</u> Dkt. 80.

3.      The Court set an evidentiary hearing on September 4, 2025.

4.      Attorney Quinones-Hollins testified at the September 4, 2025 hearing.

5.      Agent Ritchie testified at the September 4, 2025 hearing.

6.      Defense submitted Defense Exhibit 1 – text message screenshot.

7.      Attorney Quinones-Hollins testified in sum and substance that she had a long-standing attorney-client relationship with Lynn Price that dated back to 2005, which included a 2016 SDTX federal case and she believed that upon the conclusion of the 2021 aggravated assault case their attorney-client relationship ended.

8.      Attorney Quinones-Hollins testified in sum and substance, that she spoke with Agent Ritchie while he was investigating Lyndell Price for the 5015 bar arson, but was not apprised of the nature of Agent Ritchie's investigation and that conversation occurred after the conclusion of the aggravated assault.

9.      Attorney Quinones-Hollins testified in sum and substance that she was aware of the arson investigation and was contacted by Attorney Carl Moore in regards to the investigation.

10.     Attorney Quinones-Hollins testified in sum and substance that she was aware that Lynn Price's wife, Nakia Price, was also interviewed regarding the 5015 arson

2

investigation and that she knew that happened prior to her speaking with Agent Ritchie.

11.    Attorney Quinones-Hollins testified in sum and substance that when she first became aware of a potential conflict of interest when John Lee Price ("JLP") began cooperating against Lynn Price she notified the Government.  She also testified that she was advised that the Government did not consider her representation to be in conflict as it did not involve the prior 2016 federal arson case despite her longstanding attorney-client relationship with Lyndell Price.

12.    Attorney Quinones-Hollins testified in sum and substance that she did not seek guidance from the Court to determine if a conflict of interest exists.

13.    Attorney Quinones-Hollins testified in sum and substance that she did not seek permission from Lynn Price or receive his consent to represent JLP.

14.    Attorney Quinones-Hollins never received permission to discuss privileged communication with the U.S. Attorney's Office regarding conversations between herself and Lynn Price.

15.    Attorney Quinones-Hollins' recollection is in contradiction with her prior filings in regards to her representation of JLP and when she was aware of a potential or actual conflict of interest.  Attorney Quinones-Hollins' joint filing with the Government to amend bond conditions on behalf of John Lee Price, prior to the superseding indictment, Dkt. 23, 4:24-cr-565:

*Mr. Price was charged on November 21, 2023 with Possession with the Intent to Distribute a Controlled Substance (Aiding and Abetting), and Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises. On November 29, 2023, Mr. [John Lee] Price was ordered to be detained by the Magistrate Judge Robert P. Myers, Jr.* **Immediately after the Defendant's arrest and detention**, *Mr. [John Lee] Price agreed to substantially assist the government with their investigation of an arson that remained unsolved in the Southern District of Texas – Houston Division. As a result of Mr. [John Lee] Price's cooperation formal charges in the arson case were filed under seal in the Southern District of Texas in Case. No. 4:24-cr-0565.*

16.     The Court asked Attorney Quinones-Hollins if she had other information that indicated Lynn Price was being investigated in the 5015 arson. Attorney Quinones-Hollins did not directly answer the other information part until cross examination when she testified that she knew both Attorney Carl Moore, Lynn Price's business partner at Turkey Leg Hut, and Nakia Price, Lynn Price's wife and owner of Turkey Leg Hut, were interviewed as part of the investigation. That information was information Attorney Quinones-Hollins was privy to but may not have remembered until later on in the hearing due to the passage of time.

17.     Agent Ritchie testified in sum and substance that he was investigating the 5015 Arson case when he made contact with Lynn Price at his home.

18.     Agent Ritchie testified in sum and substance that he spoke with both Attorney Robert Jones and Attorney Quinones-Hollins on the phone on the day he made contact with Lynn Price at his home.

19.    Agent Ritchie testified in sum and substance that Attorney Jones indicated to the Government that he may have had multiple conflicts of interest as it pertained to the 5015 investigation.

20.    Agent Ritchie testified in sum and substance that Nakia Price, Lynn Price's wife, was interviewed regarding the 5015 investigation and that Attorney Robert Jones represented her in at least one interview.

21.    Agent Ritchie testified in sum and substance that he was told by Lynn Price that the reason the agent was at his home was because they were investigating him in regards to the 5015 arson.

22.    Agent Ritchie testified in sum and substance that Lynn Price would have Attorney Quinones-Hollins represent him in the current criminal matter.

23.    Agent Ritchie testified in sum and substance that a text message stated that Lynn Price was covered because he had Attorney Quinones-Hollins call the agent with regards to the 5015 case.

## <u>ARGUMENT & AUTHORITIS</u>

In addition to the Constitutional arguments provided in Defense's initial motion Mr. Lyndell Price offers these supplemental arguments and cases in support of the motion.

## I.    Existence of an Attorney-Client Relationship

As a threshold matter, Attorney Quinones-Hollins created an attorney-cleint relationship regarding the 5015 arson investigation.  It is well-established in the Fifth Circuit that an attorney and client can create an attorney-client relationship either explicitly or implicitly, through conduct manifesting an intention to create the attorney-client relationship.  *Nolan v. Foreman,* 665 F.2d 738, 739 n. 3 (5th Cir. 1982).  It "is usually not a difficult matter for the client to establish" an attorney-client relationship.  *Parker v. Carnahan,* 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied).  In the case sub judice, the fact that Lyndell Price requested that Attorney Quinones-Hollins speak to a federal agent he knew was investigating him on his behalf is undoubtedly conduct that manifested an intention to create the attorney-client relationship.  *Nolan,* 665 F.2d at 738.

## II.    Sixth Amendment Violations

Two bedrock principles of the American justice system are that criminal suspects are presumed innocent until proven guilty, *see, e.g., Coffin v. United States,* 156 U.S. 432, 452 (1895), and that effective criminal defense lawyers serve, rather than thwart, the search for justice, *see, e.g., Penson v. Ohio,* 488 U.S. 75, 84 (1988). The Sixth Amendment provides that "the accused shall enjoy the right … to have the Assistance of Counsel for his defence."  U.S. Const. Amend. VI.  Here, the Government has failed to show its interference of Lyndell Price's defense is

justified.  When the state … "interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense," we are in a different ballpark.  Walberg v. Israel, 766 F.2d 1071, 1076 (7th Cir. 1985) quoting Strickland v. Washington, 466 U.S. 668 (1984).

First, Attorney Quinones-Hollins testified she recognized what could be a conflict of interest upon learning that the Government required JLP to testify against Lyndell Price.  Attorney Quinones-Hollins recognized this as she had a long-standing attorney-client relationship, without considering the actual actions she took on his behalf in the current investigation.  She undeniably contacted Agent Ritchie who was engaged in the 5015 arson investigation.  Attorney Quinones-Hollins claimed no one told her what the purpose of the phone call was, but Lyndell Price knew from the record that it was regarding the 5015 arson investigation—this instant case.  Second, Attorney Quinones-Hollins testified that she checked with Attorney Sebastian Edwards who in sum and substance advised her that as long as the "tax" case, to which Lyndell Price was previously prosecuted by the SDTX U.S. Attorney's Office and represented by Attorney Quinones-Hollins, was not a subject of the current investigation she "should" be fine.

The Government's advice was incorrect.  Attorney Quinones-Hollins relationship as an attorney for Lyndell Price exceeds just one investigation. Additionally, both Attorney Quinones-Hollins and the Government had an

opportunity to seek further guidance.  The U.S. Attorney's office however, sought no judicial guidance and benefitted from the conflicted attorney representation that Attorney Quinones-Hollins provided.  Indeed, the U.S. Attorney's office persuaded both Attorney Quinones-Hollins and JLP to provide assistance in the prosecution of Lyndell Price.  Attorney Quinones-Hollins provided intimate detailed conversations of her attorney-client relationship with Lyndell Price to aid the Government in its response in opposition to Lyndell Price's pending motion to dismiss.  The Seventh Circuit noted, if the Government "extracts" from a former lawyer "secrets that it then uses in a criminal trial of the client to the latter's substantial prejudice, this *might* be the kind of serious governmental misconduct that would violate a criminal defendant's rights under the due process clause of the Fifth Amendment." United States v. Friedman, No. 15 CR 675-2, at *22 (N.D. Ill. Apr. 6, 2018).

Further, the U.S. Attorney's Office – Houston Division, who initially had no agreement with JLP according to the testimony, still required him to testify purportedly against his will because he had allegedly had a duty to cooperate regarding all crimes.  However, more strikingly is that JLP did not wish to cooperate against Lynn Price but was made to according to testimony from Attorney Quinones-Hollins.  The moment Attorney Quinones-Hollins was again put in a position of deciding between two clients, the conflict again arose.  As a result, Lyndell Price

received ineffective assistance of counsel violating his right to a fair trial and Sixth Amendment rights, because Attorney Quinones-Hollins operated under an actual conflict of interest.  United States v. Alvarez, 580 F.2d 1251, 1260 (5th Cir. 1978). An "actual conflict" for Sixth Amendment purposes is a conflict of interest that adversely affects counsel's performance.  United States v. Infante, 404 F.3d 376, 392 (5th Cir. 2005 (quoting Mickens v. Taylor, 535 U.S. 162, 172 n. 5, (2002) "an adverse effect on counsel's performance may be shown with evidence that counsel's judgment was actually fettered by concern over the effect of certain trial decisions on other clients.").

Arguably, Attorney Quinones-Hollins may not have considered or deemed the cooperation of JLP against all co-defendants not named Lynn Price as a conflict, but after being told that JLP must cooperate against Lynn Price Attorney Quinones-Hollins had a duty to seek guidance or withdraw altogether.  See Cuyler v. Sullivan, 446 U.S. 335, 346-47, 100 S. Ct. 1708, 1717 (1980).  Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial.  See e.g. The Supreme Court has long held that the right to counsel protects criminal defendants from conflicted representation.  Holloway v. Arkansas, 435 U.S. 475, 482, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978); see also, e.g., United States v. Lewisbey, 843 F.3d 653, 657 (7th Cir. 2016).  As it first concluded, in Glasser v. United States, the right to counsel

"contemplates that such assistance be untrammeled and unimpaired" by a lawyer who must "simultaneously represent conflicting interests." 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680 (1942). Stated more simply, "the Sixth Amendment right to effective assistance of counsel encompasses 'a correlative right to representation that is free from conflicts of interest.'" Blake v. United States, 723 F.3d 870, 880 (7th Cir. 2013) (quoting Wood v. Georgia, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981)).

Moreover, Lyndell Price has established prejudice under the Sixth Amendment analysis. The Government's interference fundamentally altered the structure of the adversary process, engendering a fundamentally unfair proceeding. *United States v. Cronic,* 466 U.S. 648, 657 (1984); *see also United States v. Gonzalez-Lopez,* 126 S. Ct. 2557, 2564 (2006) ("We have little trouble concluding that erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error" and therefore does not require a prejudice inquiry). Contrary to the Government contention's, the Court is in a position to detect and remedy the Sixth Amendment violation before trial. *United States v. Stein,* 2006 WL 1735260 at *25 (S.D.N.Y. June 26, 2006) (citing *Strickland,* 466 U.S. at 692). Accordingly, dismissal, or alternatively, suppression of JLP's statements is an appropriate remedy

of the government's interference to safeguard Lyndell Price's Sixth Amendment constitutional rights.

## II.    Due Process Violations

*Testimony of Agent Ritchie*

A. I've had a conversation with [Nakia Price] where I asked her, like, "Who represents you -- who represents you?" And she said Robert Jones represents her.

Q. Was she speaking for just herself or them as a couple at the time of the arson incident?

A. ***I think*** them as a couple. (Emphasis added).

Based on Agent Ritchie's testimony it indicates that Ms. Nakia Price was interviewed right after the 5015 fire.  To that point, Agent Ritchie was not present but knew that during her interview she was represented by Robert Jones. Subsequently, based on Agent Ritchie's testimony it is clear an additional interview with Ms. Nakia Price took place with Agent Ritchie and likely without the presence of either Attorney Jones or Attorney Quinones-Hollins where questions were asked concerning Lynn Price.  At that time, she indicated to him, for whatever reason, that Attorney Quinones-Hollins didn't represent "them" (emphasis added).

The date in question of said interview was not asked, but arguably it must have occurred after it was known to the U.S. Attorney's office that a conflict arose. More likely after this present motion was filed to be candid.  However, Ms. Nakia Price's understanding and Agent Ritchie's understanding of who was representing

11

Lynn Price at various stages of this investigation is captured in Defense Exhibit 1. In Defense Exhibit 1, Lynn Price exclaims that he is covered in the investigation and Attorney Quinones-Hollins contacted agent Ritchie on his behalf.

It is clear on the record that Lyndell Price had both Attorney Quinones-Hollins and Robert Jones contact Agent Ritchie on his behalf. Looking through the lens of Lyndell Price at minimum he thought Attorney Quinones-Hollins was and would be representing him in the 5015 investigation. Accordingly, that is all that is needed to show from a defendant's perspective whether a conflict could exist.

*Attorney Quinones-Hollins actively represented conflicting interests*

The testimony coupled with the briefings filed by the Government show that Attorney Quinones-Hollins "actively represented conflicting interests." See Glasser v. United States, 315 U.S. 60, 72-75 (1942). Indeed, Lyndell Price filed the instant motion seeking dismissal of the indictment or in the alternative suppressing Co-defendant JLP's testimony against Lyndell due to the attorney conflict of interest and likewise the Government's involvement in creating the conflict of interest while simultaneously failing to prevent the due process violation.

First, in the Government's response they elicited information from Attorney Quinones which was privileged information. Dkt. 80. The purpose of which was to frustrate Defendant's motion. In doing so, both the Government and Attorney Quinones violated Lyndell Price's right of confidentiality. See United States v.

Hopkins, 43 F.3d 1116, 1119, 1118 (6th Cir. 1995). In order to establish a conflict of interest, defendant must point to "specific instances in the record to suggest an actual conflict or impairment of [his] interests." . . . But also see, Cuyler v. Sullivan, 446 U.S. 335, 349, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980). If defendant can show that the conflict actually affected his counsel's representation, he need not additionally demonstrate that he suffered prejudice in order to obtain relief. To the extent that the Defendant has a duty to show instances of the attorney's actual impairment, that has been proven as well.

Much of what was written in response by the Government alleging conversations that took place between Lyndell Price and Attorney Quinones happened to also be testified to at the evidentiary hearing by Attorney Quinones-Hollins. The Government's briefing coupled with Attorney Quinones-Hollins' privileged information of Lyndell Price, served as a due process violation. The present motion not only seeks redress but also alerts the attorney of problems with the representation of co-defendant JLP. Attorney Quinones-Hollins testified she read the Defendant's motion.[1] Attorney Quinones-Hollins even opined as to why the motion was ever filed. As a result, Attorney Quinones-Hollins' aid in the Government's opposition to the present motion was likewise done with full

---

[1] We know this also to be true because she also made statements to the media, which was not addressed in the hearing.

knowledge that Defendant raised a Due Process and 6th Amendment violation.  At no time was Attorney Quinones-Hollins at liberty to disclose information regarding her attorney-client relationship to the Government.  Of paramount importance in the Government's briefing and their questioning in the evidentiary hearing was whether the two discussed ending their attorney-client relationship.  To which, Attorney Quinones-Hollins supplied information to the Government in its briefing, in its witness preparation, and ultimately as a witness.

Attorney Quinones-Hollins' testimony was much of the same as the briefing, however the main difference there was that she first sought permission from the Court in an effort to explain her position why she believed no conflict exists; and second, the testimony in that instance, while under oath, she likewise knew she would need permission from the Court as this was at best a quasi-ineffective assistance claim leveled against her whereby the rules would allow such testimony at a hearing.

The evidentiary hearing does not excuse nor negate the fact that her initial disclosures in the Government's response was not sanctioned by the Court and was provided to aid the prosecution against Lyndell Price.  Neither Attorney Quinones-Hollins nor the Government sought judicial guidance or permission when providing its response to the motion to dismiss which disclosed what is protected client communication.  There are multiple instances within the Government's briefing of

information, if believed, could have only come from Attorney Quinones-Hollins' representation and communication with Lyndell Price.

Prejudice has been shown by Attorney Quinones-Hollins' initial willingness to provide information in an effort to aid the U.S. Attorney's Office in prosecuting Lyndell Price. It likewise is shown that after being alerted to a present conflict of interest, Attorney Quinones-Hollins, along with the Government, continued to confederate and ultimately disclosed privileged communication without Lyndell Price's consent against him in Court. See United States v. Friedman, No. 15 CR 675-2, 2018 U.S. Dist. LEXIS 58642, *23-24, at *22 (N.D. Ill. Apr. 6, 2018). Courts have echoed that for the potential breach of privilege to violate a defendant's due process rights, there must be evidence that the privileged information may be used against the defendant quoting United States v. White, 970 F.2d 328, 336 (7th Cir. 1992).

Put differently, the information the Government supplied to the Court in its argument in opposition to the motion to dismiss was provided solely by Lyndell Price's former attorney and not his codefendant. Attorney Quinones-Hollins' duty of loyalty to Lyndell Price has been repeatedly violated as a result of this criminal case and the information provided by her to the U.S. Attorney's Office is being used against Lyndell Price. See also, United States v. Marren, 919 F.2d 61, 63 (7th Cir. 1990). Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct prohibit

the use of confidential information obtained in a prior representation to the detriment of the prior client or for the benefit of another party without informed written consent of the prior client. *See also* Model Rule 1.09 ("Without prior consent, a lawyer who ***personally*** has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client… (2) if the representation in reasonable probability will involve a violation of rule 1.05; or (3) if it is the same or a substantially related matter."); *Hillman Group, Inc. v. KeyMe, LLC,* 439 F. Spp. 3d 845, 858 (E.D. Tex 2020) ("Rule 1.09(a) of the Texas Rules and Rule 1.9 of the Model Rules govern conflict of interest with former clients.  Unlike the rules with concurrent clients, the Texas Rules and the Model Rules are identical 'in all important aspects.'").  Consequently, [Attorney] could not have vigorously defended [co-defendant] without a waiver from [prior criminal client]; accord United States v. Simonetti, 998 F.2d 39, 40-41 (1st Cir. 1993).

## III.   Still a Strickland Violation

Under Strickland the U.S. Attorney's Office's actions likewise prejudiced Lyndell Price. The Government had a duty in this instance, to inquire whether Attorney Quinones-Hollins could represent John Lee Price in the present matter and failed to make that inquiry.  The Government was and is well aware that Attorney Quinones-Hollins represented Mr. Price at all times relevant to this investigation, and sought Attorney Quinones-Hollins' help when opposing Lyndell Price's present

16

motion.  Further, the U.S. Attorney's Office not only advised Attorney Quinones-Hollins that it deemed her involvement was not a conflict, but they never sought judicial guidance.

Strickland already categorizes this type of behavior from the Government as well, as presumed prejudicial.  "[A]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice … So are various kinds of state interference with counsel's assistance."  Strickland at 692.

It is clear on its face that the prejudice is, and always was, present, and the Government should have intervened and tried to prevent it rather than exploit the Constitutional violations.  "Moreover, such circumstances involve impairments of the Sixth Amendment right are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent."  United States v. Cronic, 466 U.S. 658 (1984).  "If the state is not a passive spectator of an inept defense, but a cause of the inept defense, the burden of showing prejudice is lifted.  It is not the right that the state should be able to say, 'sure we impeded your defense—now prove it made a difference.  Walberg v. Israel, 766 F.2d 1071, 1076 (7th Cir. 1985).

The Government is directly responsible for the violations committed against Lyndell Price because they sought information from Attorney Quinones-Hollins in an effort to frustrate the merits of the present motion.  Briefed previously, a standard

of ineptness was argued and as a result of the hearing it is clear the Government had a much more active role in defeating Lyndell Price's constitutional rights. Prejudice has been proven. The Government's desire to strike a deal with John Lee Price in exchange for prosecuting Mr. Price created the very mechanism for Mr. Price's Sixth Amendment and rights to a fair trial to be violated. The Government in furtherance of their desire to prosecute Lyndell Price sought guidance from the lawyer that the very motion indicated there is a conflict of interest. The Government's efforts likewise in seeking the assistance created the mechanism for a Due Process violation under <u>Strickland</u>. The Government surely does not and cannot now act oblivious to Lyndell Price having the right to attorney-client privilege but the privilege has been violated by the Government's opposition (Dkt. 80) in addition to the conflict first brought to the Court's attention.

The case should be dismissed under the first prong of <u>Strickland</u> as prejudice is presumed due to the Government likewise using information of a protected nature against him.

## <u>CONCLUSION</u>

For the above reasons and prior arguments incorporated herein, Mr. Price respectfully requests that this Court dismiss the indictment with prejudice or in the alternative suppress the statements and any and all evidence derived from John Lee Price as Mr. Lyndell Price's Sixth Amendment constitutional rights and his rights to

a fair trial have been violated and he is presumed to be prejudiced by these violations.

Under these circumstances the only fair remedy is dismissal of the indictment with

prejudice, or alternatively, suppress John Price's statements as a direct consequence

of the fundamental errors by both Attorney Quinones-Hollins and the U.S.

Attorney's Office in its failure to safeguard Mr. Price's constitutionally protected

rights.

Respectfully submitted,

/s/ Chukwudi Egbuonu
Chukwudi Egbuonu
State Bar No. 24081838
Federal I.D. No. 2365112
LAW OFFICE OF CHUKWUDI EGBUONU
2202 Ruth Street
Houston, Texas 77004
Phone: (713) 635-9488
Fax:    (832) 426-5792
chuck@celawoffice.com

ATTORNEY FOR LYNDELL PRICE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument has been sent via electronic mail on this the 15th day of September, 2025, to all counsel of record.

_/s/ Chukwudi Egbuonu_
Chukwudi Egbuonu