**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | **CASE NO: 4:24-cr-00565** |
| | § | **4:24-cr-00637** |
| **JOHN LEE PRICE** | § | |
| | § | |
| *Defendant* | § | |
| ______________________________/ | § | |

**DEFENDANT'S OBJECTIONS, CLARIFICATIONS, AND REQUESTS FOR SUPPLEMENTATION TO THE PRESENTENCE INVESTIGATION REPORT**

Pursuant to Fed. R. Crim. P. 32(f)(1), Defendant John Lee Price, III, by and through undersigned counsel, submits the following written objections, clarifications, and requests for supplementation to the Presentence Investigation Report disclosed August 3, 2026 (the “PSR”).

***Preservation.*** These objections are directed to the application of the Sentencing Guidelines and to the accuracy and evidentiary support for the statements in the report. They are not, and should not be construed as, a denial of relevant conduct or a withdrawal of Mr. Price’s acceptance of responsibility under U.S.S.G. § 3E1.1. Mr. Price has pleaded guilty, has admitted the elements of both offenses of conviction. Counsel reserves the right to supplement these objections upon receipt of the investigative material referenced in ¶¶ 14 and 46, the victim impact statement referenced in ¶ 54, the restitution request referenced in ¶ 130, and the credit report referenced in ¶ 112.

# PART I — OBJECTIONS

**OBJECTION 1. ¶ 61 Base Offense Level of 24 under U.S.S.G. § 2K1.4(a)(1) is incorrect; the correct level is 20 under § 2K1.4(a)(2).**

Section 2K1.4(a)(1) sets a base offense level of 24 only where (A) the offense created a substantial risk of death or serious bodily injury to a person other than a participant and that risk was created knowingly, or (B) the offense involved the destruction or attempted destruction of a dwelling. Neither prong is established.

Subsection (a)(1)(B) does not apply. Bar 5015 is described throughout the PSR as "a bar and restaurant" (¶ 15) and "a commercial building" (¶ 16). It is not a dwelling.[1]

Subsection (a)(1)(A) requires proof that the risk was created **knowingly**. The PSR's own findings cut against that. The fire was set at approximately 4:44 a.m. (¶ 16); the deck area was "unoccupied" (¶ 16); and ¶ 31 states that the participants "scout[ed] Bar 5015 for people" before proceeding — conduct directed at avoiding, not creating, risk to persons. That the resulting explosion in fact caused greater damage than intended goes to the risk actually created, not to whether it was created knowingly.

---

[1] §2K1.4 (a)(1)(B) says "destruction **or attempted destruction**" of a dwelling. "Attempted" is a purposive word — you cannot attempt to destroy something you never aimed at. Pairing the two verbs signals that the dwelling must be an *object* of the offense, not something in the blast radius. Collateral damage to the condos is neither the destruction of a targeted dwelling nor an attempt at one. (a)(1)(A) and (a)(2)(A) are word-for-word identical except for "and that risk was created knowingly." That's the Commission showing you its method: not by how much damage happened to result. Read the dwelling provisions consistently and (a)(1)(B) versus (a)(2)(C) must turn on the same thing: did he *target* the home, or did he *endanger* it.

Price targeted a bar. That's (a)(2)(B) at 20. To the extent the neighboring residences were affected, that's (a)(2)(C) — also 20.

The applicable provision is § 2K1.4(a)(2), which sets a base offense level of 20 where the offense created a substantial risk of death or serious bodily injury without the knowing element, or involved the destruction of a structure other than a dwelling.

**REQUESTED ACTION**: That the base offense level at ¶ 61 be reduced from 24 to 20.

**OBJECTION 2. ¶¶ 45, 64 — Three-level aggravating role adjustment under U.S.S.G. § 3B1.1(b).**

The PSR adds three levels on the ground that Mr. Price "was a manager or supervisor." The record does not establish that he managed or supervised any other participant. It establishes that he was an intermediary who acted on instruction and retained nothing.

- Mr. Price acted at Lyndell Price's direction. ¶ 20: Lyndell Price "asked John Lee Price to find people to help him set Bar 5015 on fire." ¶ 29: Lyndell Price "told John Price to get a crew together." ¶ 30: Mr. Price "spoke again to Lyndell Price to confirm Lyndell Price wanted him to go forward with the arson" — he sought authorization; he did not grant it.
- The case agent described his role under oath. Testifying before the grand jury on October 29, 2025, Special Agent Ritchie described Mr. Price as "like an errand person for Lynn, kind of like not officially on the payroll, but would do things for him, would go get things, would do odd jobs around the restaurant." Tr. 8. As to the drug conduct, the agent testified that Mr. Price "was more of a transporter of the drugs for Lynn." Tr. 23.
- He retained no proceeds and had no control over compensation. ¶ 33–34: he was paid $1,000, "gave the money to Williams and did not keep any for himself," and when more was demanded he had to return to Lyndell Price to ask for it, who at first refused. A

participant who must petition another for funds and who keeps none of them is not exercising managerial authority.

- No indicia of control appear in the report. The PSR identifies no instance in which Mr. Price directed the manner or means of the offense, assigned roles, resolved disputes, claimed a larger share, or exercised decision-making authority. Application Note 4 to § 3B1.1 lists these as the distinguishing factors; none is present.

Application Note 2 to § 3B1.1 requires that the defendant have been "the organizer, leader, manager, or supervisor of one or more other participants." The Fifth Circuit distinguishes control over participants, which supports the adjustment, from control over property, assets, or activities, which does not. United States v. Ochoa-Gomez, 777 F.3d 278, 281 (5th Cir. 2015). Recruitment is one factor among several under Note 4, not a substitute for the control the guideline requires; particularly where the recruitment was itself performed on another person's instruction.

**REQUESTED ACTION**: That the three-level adjustment at ¶ 64 be removed and that the corresponding sentence at ¶ 45 identifying Mr. Price as "a manager/supervisor" be struck.[2]

**OBJECTION 3. ¶ 79 omits Mr. Price's eligibility for safety valve and grant a reduction under USSG 5C1.2(a).**

The PSR computes Count 3S by cross-reference: § 2E1.2(a)(2) directs application of "the offense level applicable to the underlying … unlawful activity," and the probation officer accordingly applies § 2D1.1. Having done so, the report must apply § 2D1.1 in full. It does

[2] In the alternative, and without waiving the foregoing, that no more than the two-level adjustment under § 3B1.1(c) be applied.

not. Section 2D1.1(b)(18) provides a two-level decrease where the defendant meets the criteria in subdivisions (1) through (5) of § 5C1.2(a). The PSR never addresses it.

Mr. Price meets each criterion. He has one criminal history point (¶ 83). No firearm or dangerous weapon was possessed, and no violence or threat of violence was used, in connection with the Travel Act offense; the firearms identified in this investigation were Lyndell Price's, purchased in Nakia Price's name, and are not attributed to Mr. Price anywhere in the report. See ATF Report of Investigation No. 782035-20-0040. The offense resulted in no death or serious bodily injury. Mr. Price was not an organizer, leader, manager, or supervisor in that offense. In fact, the case agent testified he "was more of a transporter." Tr. 23. And he truthfully provided the government all information and evidence he had concerning the offense and related conduct; the completeness of his debriefing is a matter of record.

Application Note 21 confirms that § 2D1.1(b)(18) applies "without regard to whether the defendant was convicted of an offense that subjects the defendant to a mandatory minimum term of imprisonment." The reduction is a guideline adjustment tied to the § 5C1.2(a) criteria.

**REQUESTED ACTION**: That two levels be deducted at ¶ 68 or ¶ 72 pursuant to § 2D1.1(b)(18), reducing the adjusted offense level for Count 3S from 34 to 32.

**OBJECTION 4. ¶¶ 60, 73–76 — The multiple-count adjustment is internally inconsistent and misapplies U.S.S.G. § 3D1.4.**

Three errors appear in this sequence.

- ¶ 60 states that the counts "involve separate victims, and are excluded from grouping under USSG § 3D1.2(d)." Subsection (d) is the aggregate-quantity grouping rule; it is not a separate-victims provision. The counts do not group, but the cited authority is wrong.

- The table following ¶ 73 assigns 1.0 unit to Count 1SSS (adjusted level 27) and 0 units to Count 3S (adjusted level 34).
- Section 3D1.4 assigns one unit to the group with the highest offense level — here Count 3S — and one-half unit to a group 5 to 8 levels less serious. Count 1SSS is 7 levels below Count 3S and therefore receives one-half unit. The assignments are reversed, and the total is 1.5 units, not 1.0.
- Taking the PSR's own figure of 1.0 total unit at face value, the § 3D1.4 table directs an increase of zero levels, not the "+1" applied at ¶ 75. On the report as written, the Combined Adjusted Offense Level is 34 and the Total Offense Level is 31 — not 35 and 32.

**REQUESTED ACTION**: That the table be corrected to assign 1.0 unit to Count 3S and 0.5 unit to Count 1SSS, that ¶ 60 cite the correct grouping provision, and that the arithmetic at ¶¶ 73 through 76 be conformed to whichever unit total the probation officer adopts.

**OBJECTION 5. ¶ 114 Incorrect statutory citation for Count 3S.**

Paragraph 114 states that the five-year maximum applies to both counts "pursuant to 18 U.S.C. §371." Count 3S of Docket No. 4:24CR00637-001 arises under 18 U.S.C. § 1952(a)(3), not §371. The maximum is the same, but the citation is incorrect and should be corrected, as the judgment will carry it forward.

**OBJECTION 6. ¶¶ 41–44 Chevy Nova narrative (conduct the PSR correctly excludes from relevant conduct).**

Counsel does not disturb, and affirmatively relies upon, the probation officer's placement of this conduct under the heading "Offense Behavior Not Part of Relevant Conduct." Counsel objects to the narrative detail, which conflicts with the government's own evidence in several

respects and which will be used by the Bureau of Prisons notwithstanding its exclusion from the guideline calculation.

- ¶ 43 states Lyndell Price gave Mr. Price "$500 for stealing and then burning the car." The case agent testified the $500 was payment for stealing the Nova, and that burning it was not contemplated until the participants learned the vehicle belonged to a police officer: "I don't think they were planning on actually burning it until they found out that it belonged to a police officer. So I think John Lee was paid $500 for that job." Tr. 17–18.
- ¶¶ 41–42 attribute the theft to Mr. Price. The case agent testified that "one of John Lee Price's acquaintances came upon this car one night" and that "they stole this blue Chevy Nova." Tr. 15.
- ¶ 44 states the vehicle was stolen "around 12:30 a.m. on April 20, 2020." The case agent testified the vehicle was stolen "approximately April 19th or 20th." Tr. 16. The Houston Arson Bureau supplementary reports place the companion theft from 2920 Collision on the night of April 18–19, 2020 (interview of Robert Rutherford: call received April 19, 2020 at approximately 0903 hours advising the pickup "had been stolen the night before").
- ¶ 44 identifies the owner as "S.S., a Fort Bend ISD police officer," and ¶ 43 states the vehicle "had a tracker on it." The Houston Arson Bureau supplement identifies the owner only as Sammy Smith, DOB 11/5/66, of Sugar Land, Texas, and contains no confirmation of law enforcement employment and no reference to a tracking device.
- ¶ 43 attributes the tow to Patrick Edwards, who is deceased and cannot be examined. The contemporaneous Houston Arson Bureau investigation developed a different wrecker operator, Jason Lang, described as driving "a new, black Dodge flatbed wrecker with

flames for Seven Deuces", as the investigative lead, together with witness accounts of the Nova being transported on a flatbed wrecker.

- The Houston Arson Bureau report bears internal defects bearing on its reliability: the case number is given as "200278V" in the header and "200728V" in the supplement line, and the first supplement is dated "APRIL 2, 2020" for an incident that occurred on April 23, 2020 and was assigned on April 27, 2020.

**REQUESTED ACTION**: That ¶¶ 41 through 44 be conformed to the evidence, or that the disputed assertions be struck. Counsel further requests that the heading "Offense Behavior Not Part of Relevant Conduct" be retained.

## PART II — CLARIFICATIONS

**Clarification 1. ¶¶ 1, 6 — Inconsistent Mississippi docket number.**

Paragraph 1 refers to "Docket No. 1:23CR00155"; ¶ 6 refers to "Docket No. 4:23CR00155." Confirm which is correct and conform.

**Clarification 2. ¶¶ 3, 4 — Inconsistent statutory citation for Count 2.**

Paragraph 3 charges Count 2 under "18 U.S.C. §§ 844(n) and 2"; ¶ 4 charges the same count under "18 U.S.C. §§ 844(i) and 2." Section 844(n) is the conspiracy provision and § 844(i) the substantive provision. Conform.

**Clarification 3. ¶ 8 — Docket number typographical error in the heading.**

The heading preceding ¶ 8 reads "Docket No. 4:24CR006565." The correct number is 4:24CR00565.

**Clarification 4. ¶ 27 — Interview date range appears to contain a typographical error.**

The report states Mr. Price was interviewed "on multiple separate occasions between April 12, 2014, and January 10, 2025." The 2014 date precedes the offense investigation by a decade and appears to be a transposition of 2024. Paragraph 41 refers to "his second interview on May 16, 2024." Conform.

**Clarification 5. ¶ 82 Incorrect criminal history provision cited.**

The entry assigns one point and cites § 4A1.1(a). Section 4A1.1(a) assigns three points for a prior sentence of imprisonment exceeding thirteen months. A Texas deferred adjudication with a term of community supervision is scored at § 4A1.1(c) by operation of § 4A1.2(f). The single point appears correct; the citation does not. The entry should also reflect that the cause was dismissed on December 18, 2024.

**Clarification 6. ¶ 90 Disposition date precedes the arrest date.**

The entry lists an arrest date of 12/21/2021 and a disposition date of 04/16/2021.

## CONCLUSION

Counsel requests that the probation officer address each of the foregoing items in an Addendum, revise the Presentence Investigation Report accordingly, and disclose the revised report with sufficient time for counsel to respond before the September 10, 2026 sentencing. As to any objection not resolved by the Addendum, Mr. Price requests a ruling from the Court under Fed. R. Crim. P. 32(i)(3)(B), or a determination that the disputed matter will not be taken into account and will not affect sentencing.

Counsel appreciates the probation officer's attention to this matter and is available to confer at the officer's convenience.

Respectfully submitted,

Dated: August 18, 2026

/s/ *Monique C. Sparks*
Monique C. Sparks
State Bar No. 24052177
1923 Blodgett Street
Houston, Texas 77004
Tel: (713) 520-7000
Fax: (713) 520-7013
monique@thesparkslawfirm.com
ATTORNEY FOR JOHN LEE PRICE

/s/ *Tesia J. Lisbon*
Tesia J. Lisbon
State Bar No. 24133432
tesia@thesparkslawfirm.com
ASSOCIATE ATTORNEY FOR MONIQUE SPARKS

**CERTIFICATE OF SERVICE**

I certify that a true and exact copy of the Defendant JOHN LEE PRICE's Objections to the Presentence Investigation Report was sent via electronic mail to SEBASTIAN EDWARDS, Assistant United States Attorney on August 18, 2026.

/s/ *Monique C. Sparks*
Monique C. Sparks